UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY HOXIE,

       Plaintiff,

vs.
       Case No. 09-CV-10725
       HON. GEORGE CARAM STEEH

LIVINGSTON COUNTY, et al.,

       Defendants.

_____/

ORDER OVERRULING LIVINGSTON COUNTY DEFENDANTS'
OBJECTIONS [# 126 and #127] AND GRANTING PLAINTIFF'S OBJECTIONS [#132]

Defendants Livingston County, Sheriff Robert Bezotte, Undersheriff Michael Murphy, Jail Administrator Lt. Thomas Cremonte, Matthew Hoffman, Matthew Young, Cheryl Miks, Nicole Otten, Kasey Howe, Gerald Boyer, Deputy Sgt. York, Deputy Berry, Michael Cortez, Jason Davis, Kirk Daniels, and Deputy Jackson (collectively "Livingston County") object to Magistrate Judge Mona Majzoub's July 14, 2010 Order granting in part plaintiff Gregory Hoxie's Second Motion to Compel Discovery as to the Livingston County Defendants (# 124). The Livingston County Defendants also object to Magistrate Judge Mona Majzoub's July 14, 2010 Order denying defendants' motion for protective order (#123). Plaintiff Hoxie objects to portions of the Order granting in part plaintiff Gregory Hoxie's Second Motion to Compel Discovery as to the Livingston County Defendants (# 124). Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the objections be resolved without oral argument.

## I. Background

Hoxie alleges in his First Amended Complaint that, while incarcerated in Kentucky

on July 25, 2005, he suffered a broken nose, a broken cheek bone, and a brain bleed. Hoxie was allegedly extradited from Kentucky to Michigan, and arrived at the Livingston County Jail on August 27, 2005.  Hoxie alleges Jail staff failed to complete a Pre-Intake sheet concerning medical information.  Hoxie alleges a "medical screening for non-violent offenders" completed on August 27, 2005 incorrectly reported that he was in good health with no visual signs of trauma, while omitting that he had been recently hospitalized in Kentucky, suffered a brain injury, and had a painful dental condition.  Hoxie alleges it was not until September 8, 2005 that he was interviewed by a nurse, who noted that he had suffered a skull fracture, broken nose, facial fractures, and a cracked molar on August 1, 2005, resulting in blurred vision and severe migraine headache pain.  Hoxie alleges he received no medical care at the Jail, and was again examined on September 12, 2005, revealing essentially the same medical conditions.  Hoxie alleges he again received no medical treatment, and was placed in the Jail's general population.

Hoxie continues by alleging that, on March 18, 2006, he was placed in a Jail visiting booth with inmate Ryan Backus, an inmate assigned to "medium security," although known for violent assaultive behavior.  Backus allegedly assaulted Hoxie in the visiting booth, causing Hoxie to sustain new facial fractures, a broken nose, "and either aggravation of his pre-existing head injury, or a new traumatic brain injury."  Hoxie alleges he did not receive emergency medical care after the assault despite his continuing complaints of increased blurred vision and head pain.  Hoxie alleges he was finally examined by defendant Dr. Sheryl Simpson on March 21, 2006, who reported Hoxie had a "possible blow out fracture."  Hoxie was allegedly transferred to St. Joseph Mercy Hospital where he was diagnosed with a crushed eye socket and broken nose.  Hoxie alleges surgery was performed to repair his

2

broken nose in April 2006, but that his traumatic brain injury was not addressed. Hoxie alleges he continued to complain to Jail personnel over the next two months about severe headaches, facial pain, dizziness, ringing in the ears, and blurred vision, all without receiving appropriate medical care. Hoxie was allegedly diagnosed with Tinnitus on May 19, 2006, with a follow-up recommendation that he see a specialist and receive rehabilitation. Hoxie alleges that, instead of receiving medical attention, he was discharged from incarceration at 12:30 a.m. on May 23, 2006, and driven to a remote part of town without proper clothing or regard for his medical conditions. Hoxie alleges 42 U.S.C. § 1983 claims of Eight Amendment violations based on Livingston County's failure to properly screen, classify, and segregate dangerous inmates, deliberate indifference to the risk that he would be assaulted by a dangerous inmate, and deliberate indifference to his serious medical needs.

## II. Standard of Review

A district court shall consider objections to a magistrate judge's non-dispositive order, and shall modify or set aside any portion of the order found to be clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A ruling is clearly erroneous if, upon review of the record, the district court is left with a definite and firm conviction that a mistake has been made. Patterson v. Heartland Industrial Partners, LLP, 225 F.R.D. 204, 205 (N.D.Ohio 2004) (quoting United States v. Hurst, 228 F.3d 751, 756 (6th Cir.2000)). "A district court enjoys broad discretion in managing discovery." Suntrust Bank v. Blue Water Fiber, L.P., 210 F.R.D. 196, 199 (E.D. Mich. 2002) (citing Ghandi v. Police Dep't City of Detroit, 747 F.2d 338, 354 (6th Cir. 1984)). Thus, whether to grant a motion to compel discovery lies within the district court's discretion. Suntrust Bank, 210

F.R.D. at 199 (quoting <u>Lavardo v. Keohane</u>, 992 F.2d 601, 604 (6th Cir. 1993)).

### III. Objections

#### A. Personnel Files

The Livingston County defendants object to that part of Magistrate Judge Mona Majzoub's July 14, 2010 Order granting in part Hoxie's motion to compel and ordering Livingston County to produce the personnel files of the individual defendants, and to prepare a privilege log for each record withheld on the basis of a claimed attorney-client or deliberative process privilege. Alternatively, defendants request an *in camera* inspection of those documents on the privilege log before a determination of privilege is made.

The Magistrate Judge found that the personnel files sought are relevant, and that defendants did not meet their burden of establishing that any of the documents are privileged. This court agrees that the document descriptions in the privilege log are too vague to determine whether a privilege applies. Defendants were repeatedly admonished that their privilege log "should contain sufficient information for the Court and Plaintiff to determine whether the withheld documents are properly subject to a privilege or protection." The stipulated protective order to be drafted by counsel will limit the use of the documents to this case and prevent dissemination of the documents. The Magistrate Judge's opinion was not clearly erroneous and defendants' objections are overruled.

#### B. Cell Assignments and Addresses

The Livingston County defendants object to the Magistrate Judge's order compelling an answer to the January 13, 2010 discovery request to Lt. Cremonte regarding cell assignment sheets and last known addresses for every inmate at the Livingston County Jail from August 25, 2005 through September 5, 2005, December 1, 2005 through December

15, 2005, January 25, 2006 through February 10, 2006, and March 15, 2006 through May 25, 2006, totaling 116 days.  The basis of defendants' objection is that the computer system that contains the requested data has a limited capacity for searching for information, so requiring such a search would be unduly burdensome and expensive. Defendants have made this same argument, without providing any affidavits or other support, time and again.  Defendants' objection to this part of the Magistrate Judge's order is overruled.

**C.  Jail Policies**

Plaintiff's objection relates to the section of the Magistrate Judge's order regarding production of three jail policies previously ordered to be produced by defendants.  The Magistrate Judge ordered defendants to produce copies of policy nos. 9.2, 9.3 and 12.3 which are in defendants' possession, custody or control, and which were in effect for the period August 2005 through March 2006.  If defendants do not have said policies in their possession, custody or control, defendants are permitted to produce an affidavit attesting to that fact and setting forth the steps taken to locate the policy.  The Magistrate Judge denied plaintiff's request for "a site inspection with a computer forensic analysis to verify the metadata of the files on the agency's hard drive." It is this denial to which plaintiff has filed his objection.

The numbering system on the master list of policies produced by the Livingston County defendants differs from the numbering system on the actual policies that have been produced.  Furthermore, defendants testified that the policies in effect during the relevant period are only stored electronically.  Therefore, the only way for plaintiff to determine the correct policy numbers is to review the correct electronic version.  The court grants

plaintiff's objections and orders that plaintiff be allowed to image the hard drive in order to ascertain the actual list of policies and procedures in effect at the Livingston County Jail in 2005 and 2006. Only then will plaintiff be able to request the relevant policies by their proper policy numbers.

### III.  Conclusion

Defendants' objections to Order #124 [Doc. 126] are OVERRULED.

Defendants' objections to Order #123 [Doc. 127] are OVERRULED.

Plaintiff's objections to Order # 124 [Doc. 132] are GRANTED.

The parties are to file the stipulated protective order required by Magistrate Judge

SO ORDERED.

Dated:  August 5, 2010

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 5, 2010, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---