UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY HOXIE,

    Plaintiff,

vs.

Case No. 2:09-cv-10725
HON. GEORGE CARAM STEEH

LIVINGSTON COUNTY, et al.,

    Defendants.

---

<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SHERYL SIMPSON, D.O.'S MOTION TO DISMISS [DOC. # 38] AND GRANTING IN PART AND DENYING IN PART DEFENDANTS LIVINGSTON COUNTY, SHERIFF BEZOTTE, UNDERSHERIFF MURPHY AND JAIL ADMINISTRATION LIEUTENANT CREMONTE, CORRECTIONS OFFICERS OTTEN, HOWE, CORTEZ, YORK, BOYER, JACKSON, DAVIS AND BARRY'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS [DOC. # 49]</u>

I. <u>INTRODUCTION</u>

    This case arises out of events that occurred during plaintiff Gregory Hoxie's incarceration at the Livingston County Jail. Plaintiff alleges 42 U.S.C. § 1983 claims of Eighth Amendment violations based upon defendants' failure to properly screen, classify and segregate dangerous inmates, deliberate indifference to the risk that he would be assaulted by a dangerous inmate, and deliberate indifference to his serious medical needs.

    Before the court are defendant Sheryl Simpson, D.O.'s motion to dismiss and defendants Livingston County, Sheriff Bezotte, Undersheriff Murphy and Jail Administration Lieutenant Cremonte, Corrections Officers Otten, Howe, Cortez, York, Boyer, Jackson, Davis and Barry's renewed motion for judgment on the pleadings. While discovery is well underway, the motions before the court are brought pursuant to

1

Rule 12(b)(6) and 12(c). The parties have not addressed summary judgment or issues of qualified immunity.

II. <u>FACTUAL ALLEGATIONS BY PLAINTIFF</u>

Plaintiff Gregory Hoxie was assaulted in a Kentucky jail on August 1, 2005, sustaining head injuries including a skull fracture, broken nose and a cracked molar. On August 27, 2005, plaintiff was booked into the Livingston County Jail after extradition from Kentucky. Defendant Corrections Officer Cheryl Miks, conducting a medical screening upon intake, reported that plaintiff had no signs of visual trauma and was in good health. Another corrections officer, defendant Matthew Young, failed to complete any of the medical information on the pre-intake sheet.

Jail nurse L. Erhard, R.N, saw Plaintiff on September 8, 2005, reporting a skull fracture, broken nose and cracked molar. Erhard also noted that plaintiff suffered from blurred vision, migraines and pain since the Kentucky assault. Plaintiff was examined on September 12, 2005 by jail nurse Shawn Shelton, R.N., diagnosing plaintiff as needing "significant medical treatment," documented plaintiff's head injury, blurred vision and migraines.

Defendant Sheryl Simpson, D.O. ("Simpson") treated plaintiff for the first time on December 1, 2005. Simpson is an independent contractor who provides health care to inmates incarcerated in the County Jail. Upon examining plaintiff's head, eyes, ears, nose and throat, Simpson only noted an injury to the anterior gum.

The failure to classify claim involves inmate Ryan Backus, who was charged with felony home invasion and domestic violence. Backus was classified as "medium ASL/ESC" by defendant Corrections Officer Daniels on February 6, 2006. Backus

accumulated four major misconducts in less than a month in the Livingston County Jail. Defendants are alleged to have known that Backus did not like plaintiff and was hostile toward him for cooperating with officers as an informant concerning Backus' pending cases. On March 1, 2006, Backus was placed in lock down for 15 days for assaulting another inmate. Plaintiff alleges that Backus was not reclassified to account for this alleged misconduct, and was kept in "general population."

On March 18, 2006, defendant corrections officers placed plaintiff in a visiting booth at the County Jail with Backus, where Backus assaulted plaintiff. Plaintiff suffered a cut under his eye, blurred vision and facial swelling. Defendant corrections officers escorted plaintiff to medical shortly after the incident, but plaintiff received no medical treatment. No explanation is provided to explain the lack of medical treatment at this time. Plaintiff continued to complain to defendant corrections officers of increased blurred vision and head pain, but plaintiff did not receive medical treatment until three days after the assault.

On March 21, 2006, Simpson treated plaintiff in the jail facility. Simpson noted the swelling in plaintiff's face such that she could not feel his cheekbone, and referred him to St. Joseph Mercy Hospital for evaluation of a possible blow-out fracture. On March 21, 2006, plaintiff was released back to the jail with instructions for surgery to be completed three days later or by March 24. On March 24, 2006, St. Joseph physician Daniel Sherick, M.D. diagnosed plaintiff with a crushed eye socket and broken nose, and noted plaintiff's double vision. Sherick surgically repaired plaintiff's broken nose on March 31, 2006. The delay in treatment, however, allegedly prevented the repair of one of the bones in plaintiff's face that had already set.

Over the next two months, plaintiff complained to defendant corrections officers and Simpson of severe headaches, facial pain, dizziness, ringing in the ears and blurred vision. For these symptoms, Simpson prescribed nasal spray and Motrin on April 27, 2006. In a follow-up visit on May 19, 2006, Sherick referred plaintiff to a specialist in Physical Medicine and Rehabilitation. The County released plaintiff before the completion of his sentence, at 12:34 AM on May 23, 2006. Plaintiff was driven to a remote part of town without proper clothing and without regard for his medical condition. Plaintiff was given no explanation for his early release.

III. <u>PROCEDURAL BACKGROUND</u>

Suing in his own name and alleging various claims under state and federal law, plaintiff filed his original Complaint with this court on February 26, 2009 against defendants Livingston County, Sheriff Bob Bezotte, Undersheriff Michael Murphy, Lieutenant Tom Cremonte, and Deputies Matthew Young, Matthew Hoffman, Cheryl Miks, and numerous "unknown corrections officers."

On July 9, 2009, this court dismissed plaintiff's state claims with prejudice and dismissed plaintiff's federal claims without prejudice, allowing plaintiff to amend his Complaint by July 31, 2009. Plaintiff filed his First Amended Complaint on July 31, 2009, making specific factual allegations against newly added defendant Simpson regarding her failure to provide adequate medical care during his incarceration. Plaintiff also added defendant Corrections Officers York, Barry, Otten, Jackson, Howe, Cortez, Boyer and Davis.

Simpson filed her motion to dismiss pursuant to Rule 12(b)(6) and failure to file within the statute of limitations. The court heard argument on Simpson's motion on May

4

10, 2010. Defendants Livingston County, Bezotte, Murphy, Cremonte, Hoffman, Young, Miks, Otten, Howe, Boyer, York, Barry, Cortez, Davis, Daniels and Jackson filed their renewed motion for judgment on the pleadings. The court heard oral argument on June 21, 2010.

IV. ANALYSIS

   A. *STANDARD OF REVIEW*

A complaint may be dismissed for failure to state a claim if "it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is

5

entitled to relief." Id, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

### B. *STATUTE OF LIMITATIONS*

"[C]ourts entertaining claims brought under . . . § 1983 should borrow the state statute of limitations for personal injury actions." Owens v. Okure, 488 U.S. 235 (1989). In Michigan, the applicable statute of limitations is three years. See M.C.L. § 600.5805(10) (2010); McCune v. Grand Rapids, 842 F.2d 903, 905 (6th Cir. 1988).

#### i. Relation Back Doctrine

An amendment replacing a "John Doe" caption with a party's real name may not relate back to the date of the original complaint under FED. R. CIV. P. 15(c). Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996). Plaintiff amended his original Complaint, replacing "unknown corrections officers" with specifically-named defendant Corrections Officers York, Barry, Otten, Jackson, Howe, Cortez, Boyer and Davis. In their renewed motion for judgment on the pleadings, however, defendants concede that the Amended Complaint relates back to the date of the original February 26, 2009 Complaint. Defendants, therefore, have waived any argument regarding the relation back doctrine as to the individual corrections officers.

In his Amended Complaint, plaintiff names defendant Dr. Simpson for the first time. The reference to "unknown corrections officers" in the original Complaint does not encompass Simpson, as this neither matches her job title nor accounts for her participation in the series of events. Nor does the amended complaint correct a "mistake concerning the proper party's identity" within the meaning of Rule 15(c). As plaintiff first names Simpson in the Amended Complaint on July 31, 2009, his claims against Simpson all accrued before July 31, 2006 and would be time-barred, absent

6

tolling of the statute of limitations.

### ii. Tolling for Mental Defect

Under Michigan law, if plaintiff is insane at the time the claim accrues, plaintiff, or those claiming under him, shall have one year after the disability is removed to bring the action, although the period of limitations has run. See M.C.L. § 600.5851 (2010). Plaintiff alleges that he was insane at the time of the March 18, 2006 Livingston County Jail assault, and continues to be insane through today, saving claims that would otherwise be time-barred.

The factfinder resolves the question of whether plaintiff is insane "unless it is incontrovertibly established either that the plaintiff did not suffer from insanity at the time the claim accrued, or that he recovered from any such disability more than one year before he commenced his action." Makarow v. Volkswagen of America, Inc., 157 Mich. App. 401, 407; 403 N.W.2d 563 (Mich. Ct. App. 1987); Britt v. Smith, 9 Fed. App'x 409, 2001 U.S. App. LEXIS 10759 (6th Cir. 2001).

Both plaintiff and Simpson have proffered deposition testimony and affidavits from experts, presenting conflicting opinions as to whether plaintiff was insane at the time of the March 18, 2006 assault. Plaintiff's mother testified that plaintiff was mentally ill after his discharge on May 24, 2006. On September 12, 2006, Dr. Donders, Ph.D. noted that plaintiff was not capable of making informed decisions about his care and recommended third party guardianship. In a neuropsychological evaluation, plaintiff could not explain to Donders what "guardianship" meant, and that plaintiff's mother "pretty much does everything for him." Donders recommended that plaintiff refrain from using heat sources other than the microwave, and stated that he did not feel

comfortable with plaintiff using power tools, or with plaintiff being left alone overnight. On September 23 and 28, 2009, Dr. Johnson, Ph.D. opined that plaintiff sustained frontal temporal lobe damage from the March 18, 2006 assault, causing plaintiff's psychosis.

In 2006, plaintiff petitioned the Grand Traverse County Probate Court to appoint his mother as Guardian and his brother as Conservator, which the court entered. Plaintiff's mother and brother later petitioned to be removed from their respective positions in November 2007, citing difficulties dealing with plaintiff's personality changes. At that time, the Probate Court appointed Michael Kronk, Esq. to serve as Guardian Ad Litem for plaintiff, who recommended that plaintiff be able to exercise his judgment on medical, placement or financial decisions. The Probate Court accepted Kronk's recommendation and terminated plaintiff's Conservatorship and Guardianship on December 17, 2007.

In support of her argument that plaintiff was not insane, Simpson points to plaintiff's ability to hire an attorney and file this suit in his own name on February 26, 2006. Simpson proffers testimony from Dr. Leuchter, M.D. on April 29, 2010, and Dr. Gelb, Ph.D. on May 3, 2010, whom after reviewing plaintiff's medical records have opined that plaintiff was not mentally ill from March 18, 2006 through May 23, 2006.

"A person need not be a blithering idiot in order to raise the defense of mental derangement under this statutory provision." Davidson v. Baker-Vander Veen Construction Co., 35 Mich. App. 293, 301; 192 N.W.2d 312 (Mich. Ct. App. 1971). Michigan courts consistently hold that "the fact that plaintiff was able to work, retained attorneys to prosecute his claims and even answered an interrogatory stating that he

did not have a physical or mental impairment or disability [is], at most, evidence for the trier of fact to consider in determining whether the plaintiff was mentally deranged." Id.

Although defendants have pointed to significant evidence that plaintiff did not meet the caselaw standard for insanity, the court finds none of the evidence presented to be dispositive on plaintiff's insanity, reserving this question for the factfinder.

### C. *42 U.S.C. § 1983* - Sufficiency of Allegations

Section 1983 provides a federal remedy against any person who, under color of state law, deprives another of rights protected by the constitution or laws of the United States. See 42 U.S.C. § 1983.

#### i. Deliberate Indifference to Serious Medical Needs

Plaintiff claims that contract physician Simpson and Corrections Officers Otten, Howe, Cortez, York, Boyer, Jackson, Davis and Barry were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, obliging prison authorities to provide medical care to incarcerated individuals. Estelle v. Gamble, 429 U.S. 97, 102, 103-04, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. Id. at 104-05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. Id. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ]

9

for medical care is obvious even to a lay person." Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000) (citing Farmer, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Under Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Prior to the assault in the Livingston County Jail, defendants Simpson and corrections officers were not deliberately indifferent to plaintiff's medical needs. In early September 2005, a jail nurse noted plaintiff's skull fracture, blurred vision, migraines, broken teeth and broken nose from the Kentucky assault, and diagnosed plaintiff as "needing significant medical treatment." However, there is no allegation that Simpson or the corrections officers were aware of the nurse's notes, or that they had a duty to obtain medical treatment based on the nurse's notes. See id. Plaintiff does not allege that he complained to defendants Simpson or corrections officers of his injuries during this time, nor were plaintiff's Kentucky injuries "so obvious that a layman would easily recognize the necessity for a doctor's opinion." See Blackmore, 390 F.3d at 897-98.

After plaintiff was assaulted on March 18, 2006, however, defendant corrections officers knew that plaintiff had sustained objectively serious injuries to his face and head, as they were "so obvious that even a lay person would recognize the necessity of

10

medical attention." Id. The Seventh Circuit, applying Estelle, held that jail personnel were deliberately indifferent where they did not obtain medical attention to an inmate's bruises, abrasions, and bleeding, as well as a fracture of a facial bone, for three hours. Wood v. Worachek, 618 F.2d 1225, 1229 (7th Cir. 1980). Even where jail personnel actively tried to obtain an ambulance that was not available at the time, they "did not promptly and reasonably procure medical aid for the plaintiff." Id.

Although corrections officers escorted plaintiff to medical following the assault, plaintiff alleges he was not given emergency treatment. The reason that plaintiff was not treated on March 18 is unclear. Plaintiff alleges that corrections officers continued to deny him medical treatment over the next three days, despite observing a cut on plaintiff's cheek and increasing facial swelling, and hearing plaintiff's complaints of increasing blurred vision and migraines. Taking all inferences in favor of plaintiff, plaintiff sufficiently alleges that corrections officers were deliberately indifferent in not procuring him medical treatment for his serious injuries.

Simpson had actual knowledge of plaintiff's head injury on March 21, 2006, when she referred him to an outside facility for treatment of these injuries. Although Simpson initially procured medical attention for plaintiff, his head trauma continued to develop while under her care. After plaintiff's reparative surgery on March 31, 2006, plaintiff complained to Simpson of a worsening of his initial symptoms, including tinnitus, migraines and blurred vision. Plaintiff claims that Simpson disregarded these objectively serious medical needs by prescribing only nasal spray and Motrin.

Throughout the rest of his incarceration, plaintiff complained to corrections officers of ongoing, worsening severe headaches, facial pain, dizziness, ringing in the

11

ears and blurred vision. Three days after an outside specialist referred plaintiff to a Physical Medicine and Rehabilitation specialist, plaintiff was given an early release from the Livingston County Jail.

Viewing all inferences in a light most favorable to plaintiff, he alleges sufficient facts in his Amended Complaint to state a deliberate indifference claim against Simpson, due to her lack of follow-up care after his March 31, 2006 surgery until his discharge from the Livingston County Jail on May 23, 2006. Plaintiff also alleges sufficient facts to state a deliberate indifference claim against Corrections Officers Otten, Howe, Cortez, York, Boyer, Jackson, Davis and Barry, due to their failure to procure medical treatment after the Livingston assault on March 18, 2006 through his discharge on May 23, 2006.

### ii. Deliberate Indifference to Protect or Classify Inmates

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. Farmer, 511 U.S. at 833. The Supreme Court held that this Eighth Amendment obligation includes the affirmative duty to protect inmates from being assaulted by other inmates. Id. Prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). When determining whether a prison official's conduct falls below this standard, the Court employs a two-prong test containing an objective and a subjective component. The objective component considers whether the alleged deprivation was sufficiently serious, whereas the subjective component examines the official's state of mind to determine whether he acted with "deliberate indifference" to inmate health or safety. Id. To establish that the

prison official acted with deliberate indifference, plaintiff must "present evidence from which a trier of fact could conclude that the official 'was subjectively aware of the risk and disregard[ed] that risk by failing to take reasonable measures to abate it.'" Greene v. Bowles, 361 F.3d 290, 294 (6th Cir. 2004) (quoting Farmer, 511 U.S. at 829, 847).

Defendants allegedly knew that inmate Backus was a violent, assaultive inmate. Three days before he assaulted plaintiff, Backus was on lockdown due to major misconducts including the assault of another inmate. Despite this, Backus was not re-classified or segregated from non-violent inmates. In addition, defendants allegedly knew that Backus did not like plaintiff and was hostile toward him for cooperating with officers as an informant concerning Backus' pending cases. Despite this alleged knowledge, defendants placed plaintiff in the visiting booth also occupied by Backus on March 18, 2006. This visiting booth was video-monitored by defendants. Plaintiff alleges that defendants failed to monitor the visiting room properly, allowing a known violent inmate to assault plaintiff without promptly intervening. Because of the assault, plaintiff alleges that he suffered new facial fractures, a broken nose and either aggravation of his pre-existing head injury, or a new traumatic brain injury.

Plaintiff alleges facts sufficient to state a claim against defendant corrections officers for their deliberate indifference in failing to protect him from an attack by inmate Backus, and their failure to classify and segregate inmates.

### iii. Unconstitutional Policy and Practice of Failing to Train Officers

Plaintiff's claims against the Livingston County Jail and county officials in their

13

official capacity[1] as policymakers are in fact claims against Livingston County. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Under Monell v. Dep't of Social Services of New York, 436 U.S. 658 (1978), and its progeny, a county may be held liable only (1) "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," id. at 694, and (2) when there is an "affirmative link between the policy and the particular constitutional violation alleged." Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). Plaintiff must establish that Livingston County's official policies or customs (or lack thereof) were a "moving force" behind the deprivation of plaintiff's rights and arose as a result of "deliberate indifference" to his rights. See Doe v. Claiborne County, 103 F.3d 495, 508 (6th Cir. 1996).

Plaintiff states that Livingston County, Sheriff Bezotte, Undersheriff Murphy and Jail Administration Lieutenant Cremonte, had the following "policies and/or customs": (1) "failure to train officers and staff to provide adequate medical care for inmates; alternatively, adoption of policy, custom and practice not to provide substantial medical care for inmates with serious needs," and (2) "failure to train officers to properly classify and segregate inmates." "[T]he inadequacy of police training may serve as a basis for § 1983 liability only" in situations where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,

---

[1] Plaintiff fails to state whether he sues defendants as individuals, rather than in their official capacities. Although plaintiff asks for punitive damages, which are only available in an individual capacity suit, a request for monetary damages is not alone sufficient to place a state official on notice that he is being sued in his individual capacity. Shepherd v. Wellman, 313 F.3d 963, 969 (6th Cir. 2002). If anything, the Amended Complaint suggests that defendants are being sued in their official capacities, describing that defendants had acted "under color of state law" and were responsible for the training and supervision of officers. Id.

14

that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 388-90 (1989).

When plaintiff arrived at the Livingston County Jail, a nurse diagnosed him as needing "serious medical treatment," reporting plaintiff's skull fracture, broken nose, blurred vision, missing teeth, and migraines with severe pain, but the Jail did not follow up with medical treatment for any of these injuries. A corrections officer that performing an initial screening of plaintiff did not note any of these injuries, failing to complete any of the medical information on the pre-intake sheet.

Despite sustaining facial fractures, a cut under his eye and facial swelling during his assault on March 18, 2006 in the Jail, and despite plaintiff's complaints to corrections officers of a worsening of these symptoms, no medical treatment was rendered to plaintiff until three days later. While plaintiff was eventually referred out for reparative surgery on March 31, 2006, plaintiff's facial bone could not be reset allegedly due to the delay in treatment. After an outside doctor referred plaintiff to a Physical Medicine and Rehabilitation specialist, defendants released plaintiff, dropping him off in a remote part of town after midnight, without proper clothing and without explanation for his early release. This allegation could lead a reasonable factfinder to conclude the early release occurred to avoid providing appropriate care and treatment of plaintiff's injuries, supporting plaintiff's claims that Livingston County had a policy or custom of not providing medical treatment to inmates with serious medical needs, or a failure to train personnel to properly treat inmates with serious medical needs.

Plaintiff also states sufficient facts to indicate a lack of policy or training in re-classifying and segregating known dangerous inmates from non-violent inmates. Due

15

to major misconducts including assault, Backus was on lockdown until three days before he assaulted plaintiff on March 18, 2006, but was not re-classified as a maximum security inmate nor segregated. Although Backus received four major misconducts in less than a month, he was kept in "general population." Corrections officers allegedly knew that Backus did not like plaintiff due to plaintiff's cooperation in Backus' upcoming case, yet corrections officers placed plaintiff in a visiting booth with Backus, where Backus was able to assault plaintiff.

In situations of classifying and segregating inmates, "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." See City of Canton, 489 U.S. at 390. The allegations in plaintiff's complaint are more specific than the allegations that the Sixth Circuit indicated would pass muster in Petty v. County of Franklin, Ohio, 478 F.3d 341, 349 (6th Cir. 2007). There, the plaintiff alleged that the acts giving rise to his deliberate indifference claim were proximately caused by:

> certain customs and policies of Defendants County, Franklin County Sheriff's Department and Karnes, including but not limited to, a failure to adequately and reasonably train, supervise and discipline officers in such a way to properly protect the constitutional rights of citizens; and a specific set of policies established during the days of the incidents described above, which had the effect of permitting, encouraging, approving and ratifying violations of the constitutional rights of citizens, including Plaintif[f], as described above.

Petty, 478 F.3d at 347-48. The Sixth Circuit concluded that the plaintiff's claims could not survive summary judgment; however, it questioned the district court's dismissal at the Rule 12(b)(6) stage. Id. The court stated,

> Given the allegations that Petty makes in his complaint, it is not

16

> immediately clear what more Petty could have alleged with respect to the policies that Franklin County might or might not have. We wonder how Petty would necessarily know, at the point of his complaint, and without the benefit of discovery, whether such a custom or policy might exist, and if it does exist, what its contours might be or how exactly it effected a violation of his constitutional rights.

Id.

Moreover, other courts in the Eastern District of Michigan have found less specific allegations concerning a municipality's customs or policies to be sufficient to withstand a motion to dismiss. Raub v. Corr. Med. Servs., Inc., No. 06-13942, 2008 U.S. Dist. LEXIS 2844, 2008 WL 160611 (E.D. Mich. Jan. 15, 2008) (finding sufficient the *pro se* plaintiff's allegation that "[CMS], as the State Contracted Medical provider, [has a] custom and standard of practice to advise their doctors against informing and treating patients with serious illneses [ sic ] (such as Hepatitis C) and as such [CMS] has violated Plaintiff's 8th Amendment rights"); Cleary v. County of Macomb, No. 06-15505, 2007 U.S. Dist. LEXIS 65811, 2007 WL 2669102 (E.D. Mich. Sept. 6, 2007) (finding sufficient the plaintiff's allegations that Macomb County "was aware of a pattern of constitutional violations," that the individual defendants were "acting pursuant to the official policy, practice, or custom" of Macomb County, and that Macomb County "intentionally, knowingly, and recklessly failed to instruct, supervise, control, and discipline, on a continuing basis" the individual defendants).

After evaluating defendants' 12(c) motion, and accepting plaintiff's factual allegations as true, plaintiff has alleged sufficient facts to support both (1) a lack of policy or training to provide adequate medical care for inmates' serious medical needs, and (2) a lack of policy or training to re-classify and segregate known violent inmates from non-violent inmates. Defendants' renewed motion for judgment on the pleadings is

denied.

V. CONCLUSION

For the reasons stated above, defendant Sheryl Simpson, D.O.'s motion to dismiss is GRANTED IN PART and DENIED IN PART, and defendants Livingston County, Sheriff Bezotte, Undersheriff Murphy and Jail Administration Lieutenant Cremonte, Corrections Officers Otten, Howe, Cortez, York, Boyer, Jackson, Davis and Barry's renewed motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART.

Dated: August 6, 2010

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on

August 6, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee

Deputy Clerk